CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
FEB 14 2013
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| ANTHONY L. ROTHGEB, | CASE NO. 5:12CV00026 |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | By:  B. Waugh Crigler<br>U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's October 12, 2010 protectively-filed applications for a period of disability, disability insurance benefits, and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423, and 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand the case for further proceedings. 42 U.S.C. § 405(g).  For the reasons that follow, the undersigned will RECOMMEND that an Order enter DENYING the Commissioner's motion for summary judgment, GRANTING, in part, the plaintiff's motion for summary judgment, and REMANDING this case to the Commissioner for further proceedings.

In a decision dated July 25, 2011, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since October 8, 2010, his alleged date of disability onset.[1] (R. 31.) The Law Judge determined plaintiff's degenerative disc disease status

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous

post lumbar fusion, mood disorder, and anxiety disorder were severe impairments. (R. 31.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 31.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform less than the full range of light work.[2] (R. 33.)

The Law Judge relied on portions of the testimony of Gerald Wells, a vocational expert ("VE"), which was in response to questions premised on the Law Judge's RFC finding. (R. 38-39, 78-88.) Based on this testimony, the Law Judge determined that plaintiff was unable to perform his past relevant work as a custodian or farm laborer, but could perform other jobs existing in the national economy such as a cashier, night cleaner, or convenience store clerk at the light work level, or a dispatcher, check cashier, or appointment clerk at the sedentary level. (R. 38-39, 78-88.) The Law Judge found plaintiff not disabled under the Act.

Plaintiff appealed the Law Judge's July 25, 2011 decision to the Appeals Council. (R. 1-28.) In its January 17, 2012 decision, the Appeals Council found no basis to review the Law Judge's decision. (R. 1-2.) The Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. *Id.* This action ensued, cross motions for summary judgment were filed together with supporting briefs, and oral argument was held by telephone before the undersigned on February 8, 2013.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant.

---

period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Supplemental security income is payable the month following the month in which the application was filed. 20 C.F.R. § 416.335.
[2] Light work is defined in 20 C.F.R. § 404.1567(b) as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category requires a good deal of walking or standing, or when it involves sitting most of the time, some pushing and pulling of arm or leg controls.

2

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642.

When a claimant submits additional evidence on administrative appeal, and where the Appeals Council considers the evidence but denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991). The questions become whether the evidence is both new, as opposed to cumulative, and material, in that it reasonably may have changed the decision by the fact finder had it been before him/her in the first instance, and whether it relates to the period for which benefits were denied. *Borders v. Heckler*, 777 F.2d 954 (4th Cir. 1985). If the evidence demonstrates only a worsening of the claimant's condition after the period considered, then plaintiff's remedy would be to file a new claim. *Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709 (6th Cir. 1988).

Plaintiff seeks reversal or remand on two grounds. First, he asserts that the Commissioner failed to discharge his burden at the final level of the sequential evaluation. Second, he believes that the evidence offered to the Appeals Council was new and material, that the Council erred in

3

denying review in light of the evidence, and that good cause exists to remand the case for further proceedings.

Plaintiff alleged onset date of disability is October 8, 2010, when he had an acute exacerbation of the back pain from which he had suffered since 1999. Plaintiff reported to the emergency room at Rockingham Memorial Hospital (RMH) on October 10, 2010. (R. 363.) Plaintiff complained of pain in his lower back, which sometimes radiated into his right leg, and which was not relieved by over-the-counter pain medications. (R. 363.) Plaintiff was referred to Olumide Danisa, M.D., whom he first saw on October 18, 2010. (R. 388.) Plaintiff reported being in 10 of out of 10 pain in his back and right leg, and Dr. Danisa observed that his gait was antalgic and he had a right foot drop. (R. 390.) Dr. Danisa admitted plaintiff to the hospital for pain control and an emergent MRI, which showed a new left-sided L5-S1 disk herniation. (R. 390.) Dr. Danisa tried treating plaintiff conservatively with an epidural, but this did not relieve plaintiff's pain. (R. 348.)

Plaintiff returned to Dr. Danisa on October 25, 2010 and November 4, 2010, reporting increased pain and difficulty with daily activities. (R. 381, 387.) Dr. Danisa ordered a lumbar discogram because plaintiff expressed a desire to pursue surgery rather than continue with what had been ineffective conservative treatment. (R. 383.) On December 14, 2010, Dr. Danisa opined that plaintiff may have poor pain tolerance, but he did not suspect that plaintiff was a pain medicine seeker. (R. 380.) On the basis of the discogram, Dr. Danisa recommended either ALIF (anterior lumbar interbody fusion) or TLIF (transforaminoral lumbar interbody fusion) surgery at the L4/5 level, which he believed would have, at best, a 70% success rate. (R. 380.) Plaintiff followed up with Dr. Danisa on January 8, 2011. Dr. Danisa offered plaintiff the alternative of a posterior interbody lumbar fusion (PLIF), warning plaintiff that "posterior decompression and

4

exposure does cause significant amount of discomfort and pain", or referral to another surgeon for an anterior lumbar interbody fusion. (R. 455.) Plaintiff chose to proceed with Dr. Danisa, who performed surgery on January 10, 2011. (R. 465-467.)

Dr. Danisa's surgery notes reveal that plaintiff's discogram showed that his impairment at L4-L5 was the source of plaintiff's right side pain and his L5-S1 impairment was the source of pain in plaintiff's left leg. (R. 466.) The surgery was intended only to address the L4-L5 pain because plaintiff's sustained pain was on his right side. (*Id.*) During the surgery, Dr. Danisa discovered that plaintiff had gross anatomic instability and dynamic instability between the L3 and L4, which could also be causing plaintiff's pain. (*Id.*) He performed a L3-L4 and L4-L5 posterior arthrodesis, L3 through L5 posterior segmental instrumentation using the Pangea pedicle screw system, L4-L5 TLIF procedure, L4-L5 PEEK spacer placement, and an autogenous bone graft harvest and final allograft placement. (R. 465.)

At his follow-up on January 19, 2011, plaintiff reported a back pain severity level of 6, but stated that the surgery had resolved his leg pain. (R. 515.) On January 27, 2011, plaintiff reported his severity level was an 8, but reduced to 4 with medication. (R. 511.) Dr. Danisa believed plaintiff was improving. (*Id.*)

Plaintiff saw Pete Hill, RN MSN FNP, on February 16, 2011, who diagnosed plaintiff as suffering depressive disorder and chronic pain due to trauma, for which he prescribed wellbutrin. (R. 423.) Plaintiff returned for a follow-up on February 28, 2011, where he scored a 28 on the 17 item Hamilton depression rating scale and a 20 out of 27 on the QIDS-SR form, both indicating severe depression. (R. 420.) Pete Hill continued plaintiff's wellbutrin prescription, but noted that he preferred to have Dr. Danisa, whom he described as a renowned orthopedic surgeon, address plaintiff's chronic pain treatment. (R. 421.) On March 1, 2011, plaintiff

5

reported to Dr. Danisa that he continued to have occasional low back pain. (R. 506.) Dr. Danisa advised plaintiff to continue using his external spinal stimulator and referred him to outpatient physical therapy. (R. 507.) Plaintiff's x-rays revealed stable fixation, with no evidence of hardware failure. (*Id.*)

Plaintiff's initial evaluation for physical therapy was on March 15, 2011, where he was noted to experience moderate restrictions in both hamstrings, an antalgic gait and a short leg gait, and decreased ASIS (anterior superior iliac spine) on the right with functional leg length difference. (R. 497.) Plaintiff reportedly made average progress at his physical therapy appointments on March 21, 24, and 28, before cancelling on March 31. (R. 486-495.)

On April 8, 2011, plaintiff underwent a consultative examination (CE) with David Leen, Ph.D., a clinical psychologist. Dr. Leen diagnosed plaintiff with depressive disorder and panic disorder, finding that he had a current GAF of 52.[3] (R. 552.) Dr. Leen opined that plaintiff's psychological and psychiatric symptoms alone would not prevent him from completing a normal work week without interruptions and dealing with the usual stressors of competitive work, although he would be unable to perform complex or challenging work activities. (R. 553.)

Plaintiff followed up with Dr. Danisa on May 5, 2011 where his radiographs showed stable posterior spinal construct. (R. 585.) Dr. Danisa reported marginal post-operative improvement, that he still was very dependent on narcotics, and that his chronic back pain and leg pain persisted. (*Id.*) He also noted that plaintiff had been very slow to respond to post-operative physical therapy, from which he was discharged for failure to attend appointments. (R.

---

[3] The GAF is a numeric scale ranging from zero to one hundred used to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) (DSM–IV). A GAF of 51 to 60 indicates the individual has "[m]oderate symptoms...or moderate difficulty in social, occupational, or school functioning...." DSM–IV at 32.

580-581, 585.) Dr. Danisa opined that plaintiff always would need chronic pain management and referred plaintiff to the AMC or UVA pain clinic. (R. 585.) When plaintiff followed up on June 14, 2011, he reported that he had not heard anything from pain management and that his pain's severity level was 6. (R. 605.) Dr. Danisa again attempted to refer plaintiff to pain management, noting that his surgery provided only temporary relief. (R. 603.) Dr. Danisa completed a physical limitations assessment, reporting that plaintiff's medical condition would be reasonably expected to cause pain resulting in interruption of activities and/or concentration, would require unpredictable and/or lengthy periods of rest, and that plaintiff's impairments would cause him to be absent from work very frequently. (R. 601.)

On October 18, 2011, plaintiff was treated by Richard Whitehill, M.D., at the UVA pain clinic. In evidence submitted to the Appeals Council, Dr. Whitehill revealed that plaintiff's CT myelogram demonstrated *"nonhealing"* of his L3-L4 and L4-L5 arthrodesis and degenerative disk disease at L5-S1 with foraminal stenosis. (R. 613 (emphasis added).) Plaintiff returned to Dr. Whitehill on November 15, 2011, where Dr. Whitehill explained that he would perform an anterior procedure to remove his L4-L5 graft, which is not united, and then do ALIFs at L3-L4, L4-L5, and L5-S1, a posterior instrumented arthrodesis from L3-S1 and decompression of his neuroforamen at L5-S1. (R. 612.) On December 6, 2011, Dr. Whitehill wrote a letter stating plaintiff would undergo surgery on February 13, 2012, which could require two different operative settings but was "necessary as the prior surgery did not fuse at L4-L5 and the patient continues to have pain." (R. 617.)

Under the regulations, the Appeals Council "will review" a case where the evidence submitted to it on administrative appeal is "new and material" and relates to the period on or before the date of the Law Judge's decision. 20 C.F.R. § 404.970(b). "Evidence is new 'if it is

7

Case 5:12-cv-00026-MFU-BWC Document 19 Filed 02/14/13 Page 7 of 10 Pageid#: 693

not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" *Meyers v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011) (quoting *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991)). Because "assessing the probative value of competing evidence is quintessentially the role of the fact finder", remand is appropriate if the new evidence must be "reconcile[d] with the conflicting and supporting evidence in the record." *Id.* at 707. Where, however, the new evidence is uncontroverted in the record, it may be appropriate to affirm or reverse the denial of benefits without remand. *Id.*

There is no question that the evidence submitted to the Appeals Council was new at the time. However, the evidence must also relate back to the relevant period and be material, and the Commissioner takes the position the Whitehill evidence reflects a subsequent deterioration of plaintiff's condition, and does not relate back. (Doc. No. 15, at 12.) Plaintiff, on the other hand argues that the evidence reflects an undiscovered failure of plaintiff's fusion procedures prior to the hearing decision, i.e. from the time of surgery onward. (R. 617.) From a review of the record as a whole, the undersigned finds that Whitehill's evidence establishes a failed union that occurred during the course of what his treating doctors believed was a recovery, but, in fact, was not. Irrespective of whether one might call this deterioration or a failed union, there is no question in the undersigned's mind that Whitehill's evidence relates back to the relevant period and constitutes new and material evidence demanding review under the regulations.

The only remaining question is whether the evidence is material in that it might have changed the outcome. In that regard, the record shows that if plaintiff's impairments necessitate frequent rest periods, the vocational evidence compels a conclusion that plaintiff is disabled. Indeed, the VE testified that, if the Law Judge's RFC gave credibility to the plaintiff's statements that he would need to lie down throughout the day and would miss more than two days a month,

8

there would be no jobs available. (R. 84-85.) Dr. Danisa, plaintiff's treating physician, opined that plaintiff's condition would require unpredictable periods of rest and frequent absences from work. (R. 601.) The Law Judge did not fully credit this because he was of the view that the opinion was not supported by the objective medical evidence. (R. 36-37.) Absent Dr. Whitehill's evidence, there is some X-ray evidence in the record that plaintiff's surgery had been successful, but what can be considered the more accurate Whitehill CT evidence casts doubt on the accuracy of that X-ray evidence. (Compare R. 507, 585 with R. 613.) Dr. Whitehill is very clear that the prior surgery did not fuse and, therefore, was unsuccessful. (R. 617.) The plan for plaintiff's scheduled surgery includes removal of the failed hardware as well as decompression at L5-S1, which was diagnosed in October of 2011 but never corrected. (R. 612.)

The new evidence, therefore, provides objective medical evidence supporting plaintiff's credibility and the opinion of his treating specialist that plaintiff had continuing severe lower back pain. There is no conflicting evidence in the record suggesting that plaintiff does not suffer from chronic pain, only the Law Judge's lay opinion that the surgery should have resolved this pain. Even the state agency physicians observed that plaintiff's condition was currently disabling, but the surgery was expected to resolve plaintiff's condition before he had been disabled for twelve continuous months. (R. 98, 124-125.) The new evidence certainly could be viewed as showing that surgery was unsuccessful, and reasonably could have changed the result before the Law Judge, if not the Commissioner had the Appeals Council properly reviewed it. Therefore, good cause has been shown to remand this case for further proceedings in light of the new evidence.

The balance of plaintiff's arguments before the court relate to whether the Commissioner discharged his sequential burden. More specifically, they address the weight assigned to both lay

and expert evidence relating to the limitations on plaintiff's ability to perform alternate gainful activity. These issues are inextricably linked to the weight that will be given the Whitehill evidence and any other evidence that may be adduced upon remand.

For all these reasons, it is RECOMMENDED that an Order enter DENYING the Commissioner's motion for summary judgment, GRANTING, in part, the plaintiff's motion for summary judgment, and REMANDING the case to the Commissioner for further proceedings to reassess plaintiff's residual functional capacity to perform alternate gainful activity in light of the new evidence and any other evidence that might be received by the Commissioner upon remand.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

February 14, 2013
Date